899 So.2d 890 (2004)
Paul EVANS, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-01618-COA.
Court of Appeals of Mississippi.
August 24, 2004.
Rehearing Denied January 11, 2005.
Certiorari Denied April 21, 2005.
*892 Michael Duane Mitchell, Pamela Lynn Huddleston, attorneys for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
EN BANC.
*891 GRIFFIS, J., for the Court.
¶ 1. Paul Evans was convicted of two counts of murder and sentenced to consecutive life sentences. After the denial of post-trial motions, Evans filed this appeal and raises the following issues:
ISSUE 1: The trial court erred in finding probable cause and allowing Defendant's statements admitted into evidence after he was taken into custody, handcuffed, and interrogated at a time when the probable cause did not exist for Defendant's arrest.
ISSUE 2: The trial court erred in allowing the plea agreement reached between the Defendant and the District Attorney after the Defendant had detrimentally relied upon the plea agreement, and signed a sworn confession to committing the murders with which he had been charged, in reliance upon the plea agreement.
ISSUE 3: The trial court erred by participating in plea negotiations, and subsequently by denying Defendant's Motion to Recuse.
ISSUE 4: The Defendant was denied effective advocacy at trial because his lead trial counsel was confronted with a conflict of interest when the trial court denied defense counsel's ex parte motion to withdraw as counsel and denial of effective assistance denied appellant of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments, the corresponding provisions of the Mississippi Constitution, and Mississippi law.
ISSUE 5: The Trial Court erred in failing to grant the Defendant's motion for continuance when the District Attorney's office provided one-hundred seventy-five (175) pages of supplemental discovery information to defense counsel five days prior to trial when the material contained new, previously undisclosed witnesses and other possibly exculpatory information.
ISSUE 6: The Trial Court erred in denying the Defendant's motion for a mistrial during the testimony of Tyrone Stewart.
¶ 2. The Court finds no merit to any of the issues raised and affirms the conviction and sentence.

FACTS
¶ 3. Evans and Nate Townsend were riding around with two girls in Jones County, smoking pot and cruising the roads. At some point Evans pulled a gun from under the seat of the car and threatened the girls until they were crying and afraid for their lives. Evans made them get out of the car and kneel down in the ditch. Evans walked behind each girl and shot her in the back of the head. Both girls died instantly from their head wounds. Evans and his friend then got back into the car which belonged to one of the girls and drove to a convenience store where they bought food.
¶ 4. Evans and Townsend were originally indicted for two counts of capital murder and one count of grand larceny, based on the shooting deaths of the two girls and the stealing of one of the girl's car. The *893 district attorney made a plea offer to Evans in which the capital murder charges would be dismissed in favor of a guilty plea to two counts of manslaughter if Evans signed a statement admitting firing the fatal shots. The trial court refused to accept the plea and Evans went to trial on the capital murder charges.
¶ 5. The court granted a severance of the trials of Evans and Townsend and a change of venue. The jury was selected from the voting rolls of Greene County and the trial took place in Jones County.
¶ 6. Nate Townsend provided the only eyewitness testimony to the shootings. Another witness for the State, Greg Longmire, testified that he had ridden around with Evans, Townsend and the two girls on the night in question but got out of the car prior to the events contained in the indictment but saw Evans and Townsend later that same evening at a Texaco station in Laurel in one of the girl's car and without the girls.
¶ 7. Lee Gerald Moore also testified for the State that Evans and Townsend came to his house early in the morning and Evans gave him a gun and asked him to get rid of a car. Moore testified that he took the gun but refused to get rid of the car.

DISCUSSION
ISSUE 1: The trial court erred in finding probable cause and allowing Defendant's statements admitted into evidence after he was taken into custody, handcuffed, and interrogated at a time when the probable cause did not exist for Defendant's arrest.
¶ 8. At the suppression hearing, Detective Tyrone Stewart testified that he went to Evans' home prior to the murders and spoke with Evans' parents about a missing.38 caliber revolver. After the murders Stewart met with an unnamed informant who provided information implicating Townsend and Evan in the murder. Stewart then went to Evans' home and asked him to come to the police station for questioning. Evans was placed in handcuffs and taken downtown where he was given Miranda warning prior to any questioning.
¶ 9. Evans made two statements to Stewart in which he claimed that he was innocent of the murders and implicated Townsend for the crimes. According to Stewart, Evans stated that he "was not the one that put the s---- to their head."
¶ 10. The Court found that there was probable cause for the questioning of Evans and allowed the testimony at trial.
¶ 11. There is every indication that Evans went with Stewart voluntarily and that Evan was given Miranda warnings prior to any questioning. Stewart testified that Evans was not under arrest at the time he was taken in for questioning. In Blue v. State, 674 So.2d 1184, 1202 (Miss.1996)b (overruled on other grounds), the court stated:
In the present case, "[a]n arrest with the meaning of the criminal law is the taking into custody of another person by an officer or a private person for the purpose of holding him to answer an alleged or suspected crime." Smith v. State, 229 So.2d 551, 556 (Miss.1969). "One who voluntarily accompanies an officer to a place where he may be interviewed is not under arrest." Id.

¶ 12. Even if Evans was under arrest at the time that Stewart questioned him, there was probable cause to support such an arrest. The supreme court in Blue went on to say
An arrest is valid if the arrest officer has "`probable cause' to believe that a felony has been committed, and probable cause to believe the suspect to be *894 arrested committed the felony." Abram v. State, 606 So.2d 1015, 1026 (Miss. 1992) ... "Probable cause" means less than evidence which would justify condemnation, but more than bare suspicion." Henry v. State, 486 So.2d 1209, 1212 (Miss.1986). Furthermore, [t]he existence of "probable cause" or "reasonable grounds" justifying an arrest without a warrant is determined b factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The determination depends upon the particular evidence and circumstances of the individual case.
Blue, 674 So.2d at 1202.
¶ 13. In this case, Evans was taken into custody for questioning based on information from a confidential informant with a history of having given reliable information. Stewart was also aware that Evans was possibly connected to a missing gun. These circumstances support the court's finding that the testimony concerning Evans' statements was properly admissible.
ISSUE 2: The trial court erred in allowing the plea agreement reached between the Defendant and the District Attorney after the Defendant had detrimentally relied upon the plea agreement, and signed a sworn confession to committing the murders with which he had been charged, in reliance upon the plea agreement.
¶ 14. Every plea agreement necessarily includes a statement that the person committed the crime to which he is pleading guilty. In this case, Evans signed a separate written confession. In his first plea agreement, Evans placed the blame on his co-defendant Townsend, but later signed an confession admitting the murders. The written agreement was not mentioned at trial and, based on the fact that the district attorney withdrew the plea agreement, there would be no basis for the use of the agreement. The only argument that Evans can make is that he detrimentally relied on the plea agreement.
¶ 15. The present case is not significantly like the cases where detrimental reliance has been an issue and the defendant given the benefit of the agreement. In Moody v. State, 716 So.2d 592, 593 (¶¶ 2-3)(Miss.1998), Moody, pursuant to the plea agreement, would plead guilty to murder and cooperate fully with the police by making a complete disclosure regarding his participation in and knowledge of the murder and further agreed to testify against his co-defendants. Under the agreement, Moody was also to provide truthful testimony to the grand jury, truthful testimony at trial and take a polygraph examination as to information about the charges. Moody also agreed to give information about a separate, unsolved murder. Moody fully complied with the agreement. Id. at (¶ 4). The supreme court held that "[a]greements between the State and defendants must be upheld where a criminal defendant has detrimentally relied upon the agreement." Id. at 595(¶ 16) (emphasis in original). See State et. al v. Adams County Circuit Court, 735 So.2d 201, 205 (Miss. 1999)(defendant pled guilty to other charges in return for prosecutor's agreement to dismiss charges in another court); Edwards v. State, 465 So.2d 1085 (Miss.1985)(defendant resigned from his position in exchange for immunity from prosecution); Boyington v. State, 389 So.2d 485, 491 (Miss.1980)(defendant who worked as confidential informant in return for promise of probation was entitled to have his plea agreement enforced).
¶ 16. In Vance v. State, 799 So.2d 100, 103(¶ 10)(Miss.Ct.App.2001) under a plea agreement the State lowered the charge from murder to manslaughter and recommended *895 a ten year sentence. This Court found that despite the fact that the circuit court sentenced Vance to twenty years he still received the benefit of his bargain. Id. "What Vance fails to incorporate into his analysis is that a recommendation is just that, a recommendation." Id.
¶ 17. In the present case, Evans did not agree to perform any additional service to the State in exchange for his plea agreement. We cannot find that detrimental reliance is an issue such that he should be given the benefit of the plea agreement.
ISSUE 3: The trial court erred by participating in plea negotiations, and subsequently by denying Defendant's Motion to Recuse.
¶ 18. In this case, the judge was careful not to get involved in any plea negotiations. The record does not show that the judge was aware of or was involved in any aspect of the plea agreement prior to the plea agreement being presented to the court. When the district attorney presented the appellant's plea agreement, the judge questioned the victims' family members briefly to determine whether they had been correctly advised as to the possible sentence which would go with the reduced charges. When it was clear that the district attorney was mistaken as to the sentencing, the district attorney withdrew the plea agreement. There is no indication that the judge ever became involved in any agreement other than to ask questions about the district attorney's and the families' understanding of the consequences of the proposed plea. Because the judge did not get directly involved, there was no reason for him to recuse. See Vance, 799 So.2d at 104 (¶ 15).
¶ 19. This issue is without merit.
ISSUE 4: The Defendant was denied effective advocacy at trial because his lead trial counsel was confronted with a conflict of interest when the trial court denied defense counsel's ex parte motion to withdraw as counsel and denial of effective assistance denied appellant of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments, the corresponding provisions of the Mississippi Constitution, and Mississippi law.
¶ 20. In this issue appellate counsel argues that the trial judge erred in denying defense counsel's motion to withdraw. The alleged conflict came about as the result of the plea negotiations and counsel being aware and advised that her client was probably guilty. Originally, defense counsel had proposed to put Evans on the witness stand to deny that he was the shooter in this case. After the plea bargain process, this was clearly not a viable option. This may have resulted in a change in trial strategy but did not foreclose the appellant's right to effective counsel. Counsel's performance does not show that she was impaired by the revelation.
¶ 21. We can only agree with the State that there was no conflict, there was no deficient performance, no prejudice, presumed or actual, and no merit to this assignment of error.
ISSUE 5: The Trial Court erred in failing to grant the Defendant's motion for continuance when the District Attorney's office provided one-hundred seventy-five (175) pages of supplemental discovery information to defense counsel five days prior to trial when the material contained new, previously undisclosed witnesses and other possibly exculpatory information
¶ 22. Five days prior to the trial in this case, the assistant district attorney provided a large packet of supplemental discovery to defense counsel. Defense *896 counsel at that time renewed their motion for continuance, claiming that they needs more time to review this latest discovery. The court denied the motion.
¶ 23. The standard of appellate review of the denial of a motion for continuance is the abuse of discretion standard:
Trial judges have wide latitude in deciding whether to grant continuances, and that decision is life to the sound discretion of the trial judge. Lambert v. State, 654 So.2d 17, 22 (Miss.1995). Denial of a continuance is not reversible unless manifest injustice appears to have resulted from the denial. Hatcher v. Fleeman, 617 So.2d 634, 636 (Miss.1993).
Adams v. State, 772 So.2d 1010, 1014(¶ 16) (Miss.2000), quoting Morgan v. State, 741 So.2d 246, 255 (Miss.1999).
¶ 24. There is no indication at this date that the late delivery of the discovery information resulted in any injustice to the appellant. Counsel cannot point to any witnesses who would have been called or other exculpatory information which could have changed the result at trial if a continuance had been granted. Under the applicable standard of review, we cannot find that the trial court's decision was in error.
ISSUE 6: The Trial Court erred in denying the Defendant's motion for a mistrial during the testimony of Tyrone Stewart
¶ 25. Officer Tyrone Stewart gave some testimony which confused the statements given by the appellant and Townsend, the other person involved in the crime. After objection and discussion without the jury present, the court instructed the jury to disregard the testimony and polled the jurors to determine whether they could follow the court's instruction. In Osborne v. State, 843 So.2d 99, 101(¶ 5)(Miss.Ct.App.2003), this Court stated:
"Case law unequivocally holds that the trial judge `is in the best position for determining the prejudicial effect' of an objectionable comment." Alexander v. State, 602 So.2d 1180, 1182 (Miss.1992). The trial judge is vested with discretion to determine whether a comment is so prejudicial that a mistrial should be declared. Edmond v. State, 312 So.2d 702, 705 (Miss.1975). Absent "serious and irreparable damage," the trial judge should request the jury to disregard the improper statement and deny any motion for a mistrial. Roundtree v. State, 568 So.2d 1173, 1178 (Miss.1990). "It is well settled that when the trial judge sustains an objection to testimony and he directs the jury to disregard it, prejudicial error does not result." Estes v. State, 533 So.2d 437, 439 (Miss.1988). We presume that the jurors will follow the instructions given by the court. Payne v. State, 462 So.2d 902, 904 (Miss. 1984). "To presume otherwise would be to render the jury system inoperable." Johnson v. State, 475 So.2d 1136, 1142 (Miss.1985).
¶ 26. The trial court recognized that the admonition to the jury was not a perfect solution to the problem of the officer's testimony. Still, we can find no error on the part of the court in denying the motion for mistrial.
¶ 27. Finding no error in any of the issues raised by Evans, we affirm the judgment of the court.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF COUNT I  MURDER AND SENTENCE OF LIFE, COUNT II  MURDER AND SENTENCE OF LIFE TO RUN CONSECUTIVELY TO SENTENCE IN COUNT I, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL *897 COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
KING, C.J., BRIDGES, P.J., LEE, MYERS AND CHANDLER, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. BARNES, J., NOT PARTICIPATING.